O’Neall, J.,
delivered the opinion of the Court.
These two cases depending on the question how far the master of a slave, navigating a vessel, is liable for any injury to persons other than the shippers, arising from his negligence or unskillfulness will be considered together. The importance of the rule about to be settled by this decision, has not escaped the attention of the Court; and we have therefore directed to the consideration of these cases, all the time and attention which we could bestow. The result will be now stated as briefly as can be conveniently done, in *272 order to give a-clear understanding of our views of the law, by which we have been governed in coming to our conclusion.
If the vessels had been navigated in these cases by white men, could there be no doubt that the owners would have been liable for any injury to another, from the negligence or unskillfulness of the servants employed in their navigation ? It is true that the servant would in such a case have been liable to the owners of the vessels, for the damages which they might be compelled to pay by their default, or they might have been made primarily liable to the persons who sustained the injury. For the trespass of a white man, a servant, the master is not liable, and the party injured has his remedy against the servant alone; for the act being unlawful and not resulting from his employment, the master is not regarded as actually or implicitly assenting to it. A slave is an agent wholly irresponsible (excepting for crimes) to any one but his master; for his negligent acts, not done in the course of his master’s employment, or for his wilful acts done without any assent of his master which can be fairly implied from the public nature of the employment in which his master employs him and in which the act is done, I should be disposed to say that the master was not liable; and this is as far as the case of Snee vs. Trice, 2 Bay, 345, was ever supposed to go. When a master employs slaves in any public employments or trust, such as tradesmen, ferrymen, wagoners, patroons of boats, or masters of vessels, in the coasting or river navigation, he undertakes not only for their skill and faithfulness to all those who may employ them, but also for their general skill and faithfulness to the whole community.. He constitutes them his agents for all these purposes, and the maxim., quifacit per alium facit per se, applies in full force to every act which they do in the course of his employment. If he would himself be liable for negligence or unskillfulness in the discharge of these vocations, it follows that the act done by his agent, being his own act in point of law, must make him liable for all the consequences which result from it. Unless this was the rule, the situation of the people, in this State, would be unfortunate indeed. They and their property might be injured and destroyed, by the negligence or unskillfulness of a slave employed by his owner in some public capacity, and *273 they could have neither remedy for the injury nor could they compel the master even to punish his agent. There is no hardship in holding the master to be responsible; for when he selects a slave for any public employment, he ought to have every possible inducement held out to him to compel him to make a worthy selection. A slave who is permitted to pursue a public employment out of the immediate and personal control of his master, ought to be so worthy of his master’s confidence, that he would be willing to guarantee his prudence and skill to every one; according to my views of the law, this is the guarantee which is implied in every public employment committed to a slave. The case of Wingis vs. Smith, 3 McCord, 400, is opposed in some degree to the views of these cases which I have expressed, .and so far as it conflicts with them, it must be overruled. X am, however, disposed to think that that case may be sustained on the principle, that.it was an accidental injury, arising, not from the employment of the servant in driving his master’s carriage,, but from horses, usually gentle and well trained, moving unexpectedly with the carriage from the place where it had been halted.
The rule is well settled in England in the case of hired servants, and there can be no reason why it should not apply in the case of slaves; indeed, as I have already said, reasons exist why it should be here extended to acts done wilfully in the course of a public employment, and to which the master’s assent, from its nature, may be fairly implied.
In 1 Chitty’s Pleadings, 71, it is said, “ That a master or principal is liable to be sued for injuries occasioned by the negligence or unskillfulness of his servant or agent, whilst in the course of his employment, though the act was obviously tortious; as if he laid lime in the street without any direction for the purpose, or for the negligent driving of a carriage or navigating a ship.”
In the same book, p. 382, it is said in speaking of the declaration, “ and in an action in the case against a master for the negligence of his servant, it has been decided that the negligence may be stated as that of the master, without noticing' the servant; but as the object of pleading is to apprize the opposite party of the facts, it is more correct to state them truly.”
*274 These authorities show conclusively, that in the ease of a hired servant, the master would be liable for the negligence or unskillfulness of the servant in the course of his employment; and that this arises from the act in contemplation of law being regarded as that of the master. There can be no difference in law as to the effect of an agency arising from the responsibility or irresponsibility of the agent; if there is, it must be against him who employs an irresponsible agent; in such a case it would not perhaps be going too-far to say, that he is only the instrument by which his master does the act.
In the case of Bush vs. Steenman, 1 Bos. & Pull, 404, the defendant having purchased a house by the road side, (but which he had never occupied,) contracted with a surveyor to put it in repair for a stipulated sum; a carpenter having the contract under the surveyor to do the whole business, employed a bricklayer under him, and he again contracted with a lime burner, by whose servant the lime was laid in the road, by which means the plaintiff and his wife were overturned and much hurt, and the chaise in which they were riding was considerably damaged; it was held that the defendant was liable, by the concurrence of the whole of the Judges of the Common Pleas. Ch. J. Eyre, in delivering his opinion, makes the following comment on the case of Littledale vs. Lord Longsdale, 2 H. Bl. 267, 299. “ Lord Longsdale’s colliery was worked in such a manner by his agents and servants, (or possibly by his contractors, for that would have made no difference,) that an injury was done to the plaintiff’s house, and his lordship was held, responsible. Why ? Because the inj ury was done in the course of his working the colliery; whether he worked it by agents, by servants, or by contractors, still it was his work; and though the other person might have contracted with him for the management of the whole concern without his interference, yet the work being carried on for his benefit and on his property, all the persons employed must have been considered his agents and servants, notwithstanding any such arrangements; and he must have been responsible to all the world, on the principle ‘Sic utere tuo, ut alienum non Icedas.’ ”
Take the principles on which that decision rests, and they appear to me to be decisive of the casés. The injuries were *275 done in the course of the employments in which these defendants thought proper to place their slaves. The work about which they were employed, was the work of their masters; the work was carried on for their benefit, and the vessels which occasioned the injuries to the plaintiffs by the negligence or unskillfulness of the defendants’ respective slaves, were in the use of the respective owners, and on the principle, “Sic utere tuo, ut alienum non Icedas,” they are responsible to all tbe world.
The motion for a non-suit or new trial in the case of Moore vs. Drayton, is dismissed. The motion for a new trial in the case of Austin, Parker & Co. vs. John Gordon, is granted.